1
2
3
4
5
6
7
8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  **JUAN ANTONIO FALCON,** | Case No. 1:11-cv-00427 LJO JLT (PC) |
| 12                     Plaintiff, | **FINDINGS AND RECOMMENDATION GRANTING MOTION FOR SUMMARY** |
| 13            **v.** | **JUDGMENT** |
| 14  **M. FARLEY,** | **(Doc. 21)** |
| 15                     Defendant. | |

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  In this action, Plaintiff complains that he received a package

19   while housed in prison and that this package was wrongfully returned to the vendor, rather than

20   being held by the prison until it could be received by him.

21          Now pending before the Court, is Defendant's motion for summary judgment.  (Doc. 21)

22   For the reasons set forth below, the Court recommends Defendant's motion for summary

23   judgment be **GRANTED**.

24   **I.      BACKGROUND**

25          In July 2009, Plaintiff was housed at Kern Valley State Prison.  Doc. 7 at 4.  On July 24,

26   2009, a package was delivered to the prison for Plaintiff.  Fact 3.  Before it could be delivered to

27   him, on August 4, 2009, Plaintiff was involved in a disciplinary action and was placed in

28

1

1    Administrative Segregation pending a determination of the rules violation report.[1]  Id.  Plaintiff

2    contends that when a package is delivered to an inmate at the prison, the package must have

3    affixed to it, an inventory listing the package contents.  (Doc. 25 at 3)

4          While in Ad Seg, prisoners, such as Plaintiff who are classified as "Privilege Group D,"

5    are not permitted to have packages until they complete one year in the privilege group.  Fact 7.

6    The reason for this is to preclude those who have demonstrated conduct that threatens others or

7    prison security, from access to contraband, materials that could be fabricated into weapons and

8    other items that threaten prison security.  Fact 24.  Thus, the package was not delivered to

9    Plaintiff while he remained housed in Ad Seg and remained stored at "Receiving and Releasing"

10   at KVSP.  Fact 7; Fact 8.

11         On October 20, 2009, Plaintiff was found guilty of the rules violation.  Fact 4.  His

12   punishment consisted, in part, in a 12-month placement in the SHU.  Id.  Plaintiff was endorsed to

13   the SHU on December 31, 2009 and was retained there on January 28, 2010, February 11, 2010

14   and April 14, 2009 pending his next review on September 19, 2010. Fact 6.

15         In late December 2009, Sergeant Marta, who was Defendant Farley's supervisor, told him

16   to return the package to the vendor given that Plaintiff would be housed in the SHU and unable to

17   receive the package until he completed the one-year period required of those in Privilege Group

18   D.  Fact. 8.  Marta told Farley to return approximately 30 packages at that time.  Id.  Marta was

19   concerned that the packages posed a potential safety and security risk because they could contain

20   contraband or perishable items.  Id.  In addition, the office had limited space and the packages

21

22         [1] Plaintiff claims in his opposition that he was unaware that the package had been delivered and he was not
     notified of this by prison staff. (Doc. 25 at 2-3) Plaintiff did not allege this in his First Amended Complaint. (Doc. 7

23   at 4) Thus, the Court declines to consider this claim at this time because Plaintiff failed to give Defendants notice of
     this claim.

24         Even if the Court considers this case under the Due Process Clause, prison officials may deprive Plaintiff of
     his property if this is done for the purpose that is reasonably related to a penological goal.  Turner, at 89.  As
     demonstrated by Defendant, the goals here included protecting against health and safety risk, the risk of damage to

25   the items in the package and the fact that there was insufficient storage space to hold the package given that Plaintiff
     would be retained in the SHU for a year. (Facts 4, 7, 8, 10, 13)

26         Moreover, Plaintiff was afforded significant post-deprivation remedies, through the grievance process once
     he received the chrono reporting to him the package had been returned to the vendor, and he fully participated in that

27   process. Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Therefore, for the same reasons, set forth above, the Court
     would not find a constitutional violation.

28

1    were taking up so much space as to interfere with the officers' duties.  Id.

2         Farley was aware that inmates often received packages containing food items but, during

3    the hot summer months, even non-food items became damaged due to the heat.  Fact 10.  On

4    December 28, 2009, Farley returned the package mailed to Plaintiff in an unopened condition.

5    Facts 9, 11.  To document this action, Farley completed a general chrono which explained to

6    Plaintiff,

7         On 8/4/09, you were placed into Administrative Segregation (ASU) for
          disciplinary reasons. Due to this placement your classification level has changed
8         making you ineligible to receiving quarterly packages (QP) and Special Purchase
          Orders (SPO). The package received for you at KVSP has been returned to the
9         purchasing vendor.

10   Id.  Plaintiff filed a grievance related to the handling of the package and demanded

11   reimbursement for the $10 freight fee which he claimed was imposed due to the return.  Fact 12.

12   Farley denied the grievance at the informal level as follows:

13        In your appeal you admit this package was ordered on July 24, 2009 prior to your
          Administrative Segregation Unit (ASUI-136U) on August 4, 2009. Your package
14        was stored at KVSP pending Institutional Classification Committee (ICC) action
          retaining appellant in ASU. Based on the ICC action and potential health concerns
15        the appellant's package was returned on December 28, 2009 to the purchasing
          vendor. Packages stored for prolonged periods of time may have items that go
16        beyond their stipulated shelf1ife (expiration dates) creating a potential health risk
          if consumed.
17
          Inmates housed in ASU are only eligible for Annual Personal Property packages,
18        thus making the appellant unable to receive the package ordered on July 24, 2009.
          KVSP is not liable for any fees associated with the return of packages for inmates
19        that have become ineligible to receive quarterly packages due to their ASU
          placement.
20

21   Fact 13.  Plaintiff appealed this determination.  Fact 15.  Marta and the Associate Warden, C.

22   Lawless, denied the appeal at the First Level.  Id.  The denial was based upon the same reasons;

23   Plaintiff was unable to receive packages due to his placement because KVSP could not retain

24   such packages due to concerns over health and safety.  Id.

25        Plaintiff appealed again.  Fact 16.  This appeal was denied at the second level by Chief

26   Deputy Warden Biter.  Fact 17.  This determination reiterated the need to return the package due

27   to the fact that Plaintiff could not receive it and the fact that it could pose a safety or health

28   problem if retained until Plaintiff was once again permitted to have packages.  Fact 19.  In

1  addition, Biter confirmed that Plaintiff had not been assessed any fee for return of the package

2  and the person who had actually purchased the items for Plaintiff, received a full reimbursement

3  once the package was returned.  Id.

4          At the third level, Plaintiff's appeal was denied once again.  Fact 23.  This denial was

5  based upon the fact that Plaintiff had lost his privilege of receiving packages due to his placement

6  in Ad Seg and in the SHU.  Id.

7          In his first amended complaint, Plaintiff contends that Farley violated his rights by failing

8  to open the package before returning it to verify it contained perishable items and by failing to

9  store the package until he could receive it.

10  **II.      LEGAL STANDARD**

11          **A.      Summary Judgment**

12          Summary judgment is appropriate when "the pleadings, the discovery and disclosure

13  materials on file, and any affidavits show that there is no genuine issue as to any material fact and

14  that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact

15  is one which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

16  248 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a

17  reasonable trier of fact could return a verdict in favor of the nonmoving party.  Id.

18          A party seeking summary judgment "always bears the initial responsibility of informing

19  the district court of the basis for its motion, and identifying those portions of the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

21  which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v.

22  Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Where the moving party

23  will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no

24  reasonable trier of fact could find other than for the moving party."  Soremekun v. Thrifty

25  Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue as to which the nonmoving party

26  will have the burden of proof, however, the movant can prevail merely by pointing out that there

27  is an absence of evidence to support the nonmoving party's case."  Id. (citing Celotex, 477 U.S. at

28  323).

1    If the moving party has sustained its burden, the nonmoving party must "show a genuine

2    issue of material fact by presenting affirmative evidence from which a jury could find in [its]

3    favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (citing Anderson, 477 U.S. at 257

4    (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material

5    issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere

6    scintilla of evidence in [its] favor" to withstand summary judgment.  Stefanchik, 559 F.3d at 929.

7    Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

8    nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Electric Indus. Co. v. Zenith

9    Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).

10    In resolving a summary judgment motion, "the court does not make credibility

11    determinations or weigh conflicting evidence."  Soremekun, 509 F.3d at 984.  Rather, "the

12    evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

13    in [its] favor." Anderson, 477 U.S. at 255.  See T.W. Electric Service, Inc. v. Pacific Electric

14    Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out

15    of the air; it is the nonmoving party's obligation to produce a factual predicate from which the

16    inference may justifiably be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-

17    45 (E.D. Cal. 1985).

18    The court must apply standards consistent with Federal Rule of Civil Procedure 56 to

19    determine whether the moving party has demonstrated that there is no genuine issue of material

20    fact and judgment is appropriate as a matter of law.  Henry v. Gill Indus., Inc., 983 F.2d 943, 950

21    (9th Cir. 1993).  In resolving a motion for summary judgment, the Court examines the evidence

22    provided by the parties, including pleadings depositions, answer to interrogatories, and

23    admissions on file. See Fed. R. Civ. P. 56(c).

24    **B.    First Amendment**

25    Under the First Amendment, prisoners enjoy the right to send and receive mail.  Witherow

26    v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  However, prison officials may adopt policies or

27    practices that impinge on a prisoner's First Amendment rights if they are "reasonably related to

28    legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  The prison

1  regulations impacting the sending and receiving of mail that are designed to protect the security

2  and order of the facility or which impacts the prison's rehabilitative efforts do not offend the

3  Constitution. Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224

4  (1974). Likewise, prison officials have a legitimate interest in protecting the health and safety of

5  inmates and staff. See Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998) (per curiam).

6  When the prison implements policies that impact outgoing mail—which can have little

7  likelihood of impacting on the internal order or security of the prison--the need for the prison

8  regulation must have a "closer fit between the regulation and the purpose it serves" than when

9  considering regulations related to incoming mail. Thornburgh v. Abbott, 490 U.S. 401, 412

10  (1989). In any event, whether the policy addresses outgoing or incoming mail, the "less

11  restrictive means" test does not apply. Id. at 411-413. Finally, Courts are required to afford

12  "considerable deference" to the determinations of prison officials in regulating the relations of

13  prisoners with the outside world. Thornburgh, 490 U.S. at 408.

14  Here, the material sent to Plaintiff did not contain any communication by the sender;

15  instead, the package contained products for Plaintiff's personal comfort and hygiene. (Doc. 7 at

16  4) Thus, unlike the cases cited above, Farley's action in returning the package did not interfere

17  with Plaintiff's right to communicate information or to receive information. Thus, the Court does

18  not that the First Amendment is implicated upon the facts set forth in this and, on this basis,

19  recommends the motion be **GRANTED**.

20  In any event, the undisputed evidence demonstrates that Plaintiff was unable to receive

21  packages during the time he remained in Ad Seg and the SHU. Fact 7. This was caused by

22  Plaintiff's actions, not Farley's. California Code Regulations Title 15 section 3044(g) reads,

23  (2) Any inmate removed from the general population due to disciplinary or
   administrative reasons, shall forfeit their privileges within their general population
24  privilege group pending review by a classification committee.

25  (3) . . .

26  ¶¶

27  (E) Inmates shall be eligible to acquire a personal property package after
   completion of one year of Privilege Group D assignment.
28

6

1    Moreover, Farley has proffered legitimate reasons why the package was returned rather

2    than being stored.  Facts 7, 8, 9.  Though Plaintiff argues that the package did not contain food

3    items, he fails to describe what "hygiene items" were included in the package such that the Court

4    may conclude that the passage of a year would not have impacted Plaintiff's ability to use the

5    items safely.  (Doc. 7 at 4)  Further, Plaintiff does not address whether the heat to which stored

6    packages are subjected during the summer months, would have damaged the items in the

7    package. Id.

8        Finally, Plaintiff seems to imply that had the package been delivered to him before he

9    engaged in the conduct that caused him to be placed in Ad Seg, then it would have been stored for

10   him until he was able to have it.  He implies also that, in this event, he could have had the items

11   made available to him for use in Ad Seg and in the SHU given that he was permitted to have

12   some of his other property.  On this basis, he asserts Farley should be held liable.

13       First, the Court notes that only 11 days passed from the time of the receipt of the package

14   at the prison and the time Plaintiff was placed in Ad Seg and this period included two weekends.[2]

15   At most, however, the delayed delivery constitutes negligence rather than a constitutional

16   violation.  Second, there were no facts alleged in the complaint nor any evidence submitted here

17   that Farley was responsible for the failure to deliver the package to Plaintiff before the rules

18   violation report was issued.

19       On the other hand, Plaintiff argues that the CDCR policy manual required Farley to retain

20   the package with Plaintiff's property that was confiscated when he placed in Ad Seg and to store

21   it throughout the time he remained in Ad Seg.  (Doc. 25 at 2)  However, Defendant counters with

22   the fact that the package *was* stored while Plaintiff was in Ad Seg and returned to the vendor only

23   after the SHU term had been assessed.  (Doc. 28 at2)  The Court notes that the package was

24   returned on December 28, 2009 after Plaintiff had been assessed the SHU placement (Fact 4) but

25   before his RVR was re-heard on February 18, 2010.  Fact 5.  However, by this time, Plaintiff had

26   already been placed in the SHU.  Fact 6.  Moreover, indisputably, Plaintiff *was* assessed a SHU

27       [2] The court may take notice of facts that are capable of accurate and ready determination by resort to
     sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

28

7

1    term of one year so it is difficult to see how the early return of the package caused Plaintiff harm.

2         Alternatively, Plaintiff seems to argue that the package could have been inventoried to

3    him when he entered Ad Seg and then stored for him until he was in a placement that allowed him

4    to have the package.  However, the policy cited by Plaintiff, CDCR policy 54030.8, prohibited

5    him from receiving the package at the very instant he was placed in Ad Seg.  Thus, the package

6    could not have been inventoried to him.  In addition, there is no evidence nor was there any

7    allegation in the complaint, that Farley had any role in developing the property inventory when

8    Plaintiff entered Ad Seg.  In fact, the inventory was not completed by Farley.  (Doc. 28 at 6)

9         In any event, even assuming Farley violated a CDCR policy requiring storage of the

10   package until Plaintiff entered the SHU or, even, until he could have the property turned over to

11   him, violation of such a policy in and of itself, does not support a constitutional violation.

12   Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002).  Section 1983 provides a remedy *only* for the

13   deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the

14   United States; it is not a mechanism through which all torts may be prosecuted. Id.

15        Finally, the evidence demonstrates that Farley did not decide to return the package on his

16   own.  (Facts 8-10)  Instead, he was required to do so by his supervisor.  Id.  Thus, there is no

17   evidence that Farley intended to cause harm and, indeed, there is no evidence that Plaintiff

18   suffered harm because, due to his own actions, he made it so he was not entitled to have the

19   package.

20   **III.    Findings and Recommendation**

21        For the reasons set forth above, the Court concludes that Farley is entitled to summary

22   judgment and recommends that the motion be **GRANTED**.

23        These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the

25   Local Rules of Practice for the United States District Court, Eastern District of California. Within

26   14 days after being served with these findings and recommendations, any party may file written

27   objections with the Court and serve a copy on all parties.  Such a document should be captioned

28   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

1   failure to file objections within the specified time may waive the right to appeal the district

2   judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3

4   IT IS SO ORDERED.

5      Dated:   **November 29, 2012**                    **/s/ Jennifer L. Thurston**
                                                       UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28